IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| LMS COMMODITIES DMCC, | § | |
|---|---|---|
| Plaintiff, | § | |
| v. | § | 1:18-CV-679-RP |
| LIBYAN FOREIGN BANK, | § | |
| Defendant. | § | |

## **ORDER**

Before the Court is Defendant Libyan Foreign Bank's (the "Bank") motion to dismiss. (Dkt. 10). Also before the Court are several related motions and filings: Plaintiff LMS Commodities DMCC's ("LMS") first amended complaint, (Dkt. 11), its motion for leave to file a second amended complaint, (Dkt. 17), its motion to strike portions of the Bank's motion to dismiss, (Dkt. 14), and the Bank's motion to strike portions of LMS's reply brief in support of its motion for leave to amend, (Dkt. 22). Having considered the parties' motions and responsive briefing, the record, and the relevant law, the Court finds that: (1) the Bank's motion to dismiss should be granted, (2) LMS's first amended complaint should be struck, (3) LMS's motions should both be denied, and (4) the Bank's motion to strike is moot.

## I. BACKGROUND

LMS alleges that it secured a $108 million judgment against the Banks from the Court of Appeals in the Republic of Tunisia and seeks to have that judgment recognized and enforced by this Court. (Compl., Dkt. 1, at 1–2). The Bank responds that LMS's "judgment" is not in fact a judgment at all; it is an order affirming a lower court's entry of a prejudgment, temporary asset-freeze order. (Mot. Dismiss, Dkt. 10, at 1). According to the Bank, LMS fails to state a claim for relief because the Texas Uniform Foreign Country Money-Judgment Recognition Act ("UFCMJRA"), under which

1

LMS seeks relief, does not permit recognition and enforcement of prejudgment orders. (*Id.* at 7). The Bank also objects that the Court lacks jurisdiction to enforce a prejudgment freeze order in the absence of a final judgment in LMS's favor. (*Id.* at 13).

Instead of timely responding to the Bank's motion, *see* W.D. Tex. Loc. R. CV-7(e)(2), LMS filed a document purporting to be an amended complaint 21 days later. (1st "Am. Compl.," Dkt. 11). Concerned that LMS had attempted to smuggle an untimely response under the guise of an amended complaint, the Court ordered the parties to participate in a telephone conference at which it directed LMS to seek leave to file a second amended complaint that did not contain responsive arguments. (Order, Dkt. 12; Minute Entry, Dkt. 15). LMS nominally did so, filing a three-sentence motion for leave in which it offers no justification for receiving leave to amend. (Mot. Leave, Dkt. 17). The parties have since filed several advisories about the state of the Tunisian litigation that is the subject of this case. (Dkts. 21, 23, 24).

## II. DISCUSSION

Because an amended pleading supersedes the original, *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994), the Bank's motion to dismiss would be moot if LMS has in fact amended its complaint. For the reasons discussed below, the Court finds that it has not: LMS's first "amended complaint" is not in fact a pleading under the Federal Rules of Civil Procedure, and the Court will deny LMS leave to file its second "amended complaint."

### A. First "Amended Complaint"

In its reply brief, the Bank argues that LMS's "first amended complaint" is simply an untimely opposition brief titled as an amended pleading. (Reply Mot. Dismiss, Dkt. 13, at 3). According to the Bank, this so-called pleading contains none of the features required by the Federal Rules of Civil Procedure. (*Id.* at 3–5). It does not "state its claims . . . in numbered paragraphs," Fed. R. Civ. P. 10(b); it has no statement of jurisdiction, Fed. R. Civ. P. 8(a)(1); and it has no demand for

relief, Fed. R. Civ. P. 8(a)(3). (*Id.*). To conclude that some of these deficiencies are fortuitously rescued by LMS's incorporation of its original complaint[1] would be to overlook the fundamental fact that almost none of the "amended complaint" contains factual allegations. Rather, LMS spends much of its "amended complaint" responding directly to the Bank's motion to dismiss. (*See* 1st "Am. Compl.," Dkt. 11, at 8 (arguing that the Bank's declaration in support of its motion should be struck); *id.* at 8–9 (arguing against one of the Bank's defensive arguments in its motion); *id.* at 9–11 (arguing against another of the Bank's arguments in its motion)). In the document's "conclusion and prayer," LMS asks that the arguments in the Bank's motion to dismiss "not be given consideration" because they are "irrelevant." (*Id.* at 12). Because LMS's "amended complaint" largely offers responsive arguments to the Bank's motion to dismiss rather than state factual allegations in support of its own claims for relief, the Court agrees with the Bank that LMS's "amended complaint" is an untimely response masquerading as a deficient pleading. The Court will therefore disregard it. *See Simmons v. Outreach Health Cmty. Care Services LP*, EP-15-CV-286-KC, 2016 WL 3162147, at *3 (W.D. Tex. June 3, 2016) (citing *Frick v. Quinlin*, 631 F.2d 37, 40 (5th Cir. 1980) (stating that the "district court was free to either consider or disregard" an untimely response); *J & J Sports Productions, Inc. v. Tawil*, SA-09-CV-327-XR, 2009 WL 4639670, at *2 (W.D. Tex. Nov. 30, 2009) (same).[2]

### B. LMS's Motion for Leave to Amend

The Federal Rules of Civil Procedure permit amendment as a matter of course if the amended pleading is filed within 21 days after service of a motion under Rule 12(b). Fed. R. Civ. P. 15(a)(1)(B). Otherwise, a party may amend only with the opposing party's consent or the court's

---

[1] In its two paragraphs of new factual allegations, LMS includes a sentence stating that it "incorporates by reference all claims and subject matter" contained in its original complaint." (1st "Am. Compl.," Dkt. 11, at 7).

[2] Similarly, the Court denies LMS's "Motion to Strike Defendant's Version of the Facts of the Case," filed nearly a month after the Bank's motion to dismiss. (LMS Mot. Strike, Dkt. 14). In its motion, LMS does precisely what it does in its untimely responses: it contests the accuracy of the facts and law cited in the Bank's motion and asks them to be struck "as inadmissible." (*Id.* at 3). The Court will not reward LMS's attempt to circumvent the Local Rules by considering an untimely response clothed as a motion to strike.

3

leave. Fed. R. Civ. P. 15(a)(2). Rule 15(a) requires a trial court "to grant leave to amend 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002) (citation omitted). Accordingly, a district court must possess a "substantial reason" to deny a request for leave to amend. *Id.* Nonetheless, "leave to amend is by no means automatic." *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Halbert v. City of Sherman*, 33 F.3d 526, 529 (5th Cir. 1994)). In deciding whether to grant leave to amend, the district court may consider a variety of factors in exercising its discretion, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment. *Id.* (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).

LMS makes no effort to justify receiving leave to amend. In its bare-bones motion, LMS says only that it would be "[i]n the interest of justice" to grant it leave. (Mot. Leave, Dkt. 17). Attached to that motion is another purported pleading plagued by the same deficiencies as the first. (2nd "Am. Compl.," Dkt. 17-1). Like the first, LMS spends much of the document responding to the Bank's motion to dismiss. (*Id.* at 5 (arguing that the law and facts in the Bank's motion are "inadmissible"); *id.* at 6–7 (arguing that the Bank makes incorrect statements in its motion that should be "ignored as inadmissible"); *id.* at 12–15 (asking the Court to reject a series of defenses raised by the Bank in its motion); *id.* at 16 (arguing that the Court should reject the assertions made by the Bank in its motion)). This second "amended complaint" therefore represents a repeated failure to cure the deficiencies in LMS's first "amended complaint": once again, it contains responsive arguments to a defensive motion instead of simply stating factual allegations in the manner required by the Federal Rules of Civil Procedure. LMS's repeated failure to file a valid pleading is a substantial reason for

4

denying leave to amend. Because the Court denies LMS's motion for leave, LMS's live pleading is its original complaint, to which the Bank's motion pertains.

### C. The Bank's Motion to Dismiss

Although the Bank is not explicit about the rule under which it seeks dismissal, the substance of its motion implies that it seeks to dismiss LMS's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Mot. Dismiss, Dkt. 10, at 18 (arguing that the Tunisian court order is not enforceable by this Court "under any conceivable theory")). Given LMS's failure to timely respond, the Court may consider the Bank's motion to be unopposed. *See* Loc. R. W. D. Tex. CV-7(e)(2) (requiring an opposing party to respond to a dispositive motion within 14 days and allowing the district court to grant a motion as unopposed if no timely response is filed). However, the Court acknowledges the Fifth Circuit's reluctance to dispose of a cause of action simply for failure to comply with a response deadline imposed by the local rules. *See Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006) (noting disapproval of an automatic grant of a dispositive motion for failure to comply with local rules). Accordingly, the Court will consider whether dismissal of LMS's original complaint is warranted.

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."

*Iqbal*, 556 U.S. at 678. Dismissal is appropriate under Rule 12(b)(6) "[w]hen a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989).

In its motion to dismiss, the Bank argues that LMS's UFCMJRA claim must be dismissed because the court order on which LMS relies is not a foreign-country judgment entitled to recognition under the Act. (Mot. Dismiss, Dkt. 10, at 7). This is a question of law properly resolved at this stage in the litigation, for "[a] court's ruling on the content of a foreign country law is a ruling on a question of law." *Reading & Bates Const. Co. v. Baker Energy Res. Corp.*, 976 S.W.2d 702, 708 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *see also Presley v. N.V. Masureel Veredeling*, 370 S.W.3d 425, 432 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("A trial court's enforcement of a foreign country judgment presents a question of law."). In determining foreign law, a federal court "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1.[3] Such evidence is properly considered when determining foreign law for purposes of deciding a 12(b)(6) motion. *de Fontbrune v. Wofsy*, 838 F.3d 992, 996–1000 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Nov. 14, 2016). In ruling on the Bank's motion, therefore, the Court will consider the evidence in the record that is relevant to the determination of the Tunisian order that LMS seeks to enforce.

The Texas UFCMJRA applies to a foreign-country judgment only to the extent that the judgment (1) "grants or denies recovery of a sum of money" and (2) "is final, conclusive, and enforceable" under the law of the country in which it was rendered. Tex. Civ. Prac. & Rem. Code § 36A.003(a). According to the Bank, the order for which LMS seeks recognition "does not entitle LMS to recover any money at all" because it is merely a "temporary freeze of the Bank's Tunisian assets." (Mot. Dismiss, Dkt. 10, at 7). Moreover, it is not a final or conclusive order under Tunisian

---

[3] As it is under Texas law, the determination of foreign law "must be treated as a ruling on a question of law" under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 44.1.

law because it is simply a prejudgment remedy issued to preserve the status quo in anticipation of a merits decision. (*Id.* at 9). According to the Bank, Tunisian law allows a purported creditor to obtain a temporary freeze of a debtor's assets before a court determines whether the debt is actually owed. (*Id.* at 4). Upon receiving this preliminary relief, the creditor must then file a separate action to obtain a judgment on the underlying indebtedness. (*Id.*). The Bank argues that LMS obtained only the preliminary relief of this temporary asset-freeze order but did not obtain a final judgment on the merits of the Bank's alleged debt. (*Id.* at 5).

Attached to the Bank's motion is an affidavit from a Tunisian attorney, Ahmed Ouerfelli. (Ouerfelli Aff., Dkt. 10-1). Ouerfelli avers that the Court of First Instance in Tunis ordered a freeze of Bank assets in the possession of third parties in Tunisia up to the amount of $108.7 million in June 2013. (*Id.* ¶ 18). The Bank appealed that decision, and the Tunis Appellate Court affirmed it in January 2014. (*Id.* ¶ 19). LMS seeks recognition of that order, but Ouerfelli avers that the 2014 freeze order "is not considered a final judgment on the merits," "[n]or is it a money judgment," because it "is merely a provisional order issued in anticipation of a ruling on the merits of the alleged indebtedness." (*Id.* ¶ 20). According to Ouerfelli, the merits litigation remains pending. (*Id.* ¶¶ 23–28). On March 7, 2019, the Bank filed an unrebutted advisory attaching a translated opinion from the Tunisian Court of Appeals in which that court rejected LMS's claim on the merits and ordered the release of the Bank's frozen assets. (Dkt. 24). All of this evidence, properly considered at this stage under Federal Rule of Civil Procedure 44.1, leads the Court to conclude that the 2014 order referenced in LMS's original complaint is not a judgment to which the UFCMJRA applies because it neither "grants or denies recovery of a sum of money" nor is it "final, conclusive, and enforceable" under Tunisian law. Tex. Civ. Prac. & Rem. Code § 36A.003(a). LMS's claim for relief under the UFCMJRA is therefore dismissed for failure to state a claim upon which relief can be granted.

7

## IV. LEAVE TO AMEND

Although Federal Rule of Civil Procedure 15(a)(2) permits a court to grant leave to amend pleadings and "evinces a bias in favor of granting leave to amend, it is not automatic." *Matter of Southmark Corp.*, 88 F.3d 311, 314 (5th Cir. 1996) (internal quotation marks and citation omitted). Among other things, "a party must 'expressly request' leave to amend." *Law v. Ocwen Loan Servicing, L.L.C.*, 587 F. App'x 790, 796 (5th Cir. 2014) (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003)). Even though "[a] formal motion is not always required," the requesting party must still "set forth with particularity the grounds for the amendment and the relief sought." *Willard*, 336 F.3d at 387. When a plaintiff fails to request leave to amend or indicate what might be added to the complaint if amendment were allowed, a district court may dismiss the cause of action with prejudice. *See Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 178 (5th Cir. 2012).

Additionally, as discussed above, a district court may deny leave to amend for "repeated failures to cure deficiencies by amendments previously allowed" and "futility of the amendment." *Jones*, 427 F.3d at 994 (citing *Dussouy*, 660 F.2d at 598). "Futility is determined under Rule 12(b)(6) standards, meaning an amendment is considered futile if it would fail to state a claim upon which relief could be granted." *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016). LMS has not requested leave in a timely filing that the Court will consider; that alone is enough to deny leave to amend. But even if leave had been properly requested, it would not be appropriate to grant, both in light of LMS's repeated failure to cure the deficiencies in its original complaint and, independently, because it would be futile for LMS to continue to seek recognition of a prejudgment asset-freeze order. The Court therefore declines to grant LMS a third attempt to file a valid amended complaint.

## V. CONCLUSION

For the reasons given above, **IT IS ORDERED** that the Bank's motion to dismiss, (Dkt. 10), is **GRANTED**. LMS's claims against the Bank are **DISMISSED WITH PREJUDICE**. LMS's motion to strike, (Dkt. 14), and its motion for leave to file a second amended complaint, (Dkt. 17), are both **DENIED**. Because LMS's motion for leave is denied, the Bank's motion to strike LMS's reply in support of its motion for leave, (Dkt. 22), is **DENIED AS MOOT.**

**SIGNED** on April 30, 2019.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE